**FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

In re:

       MICHAEL MISZKO, JR.,

                        Debtor.

-------------------------------------------------------------X

    :    Chapter 13
    :
    :    Case No. 18-36702 (CGM)

# MEMORANDUM OF DECISION ON
# CHAPTER 13 TRUSTEE'S MOTION FOR OBJECTION TO CLAIM 4-1
# AND COURT'S *SUA SPONTE* CONSIDERATION OF DISGORGEMENT

**A P P E A R A N C E S :**

THOMAS C. FROST
399 Knollwood Road, Suite 102
White Plains, NY 10603
*Attorney for Krista M. Preuss, Chapter 13 Trustee*

ANDREA B. MALIN
Genova & Malin LLP
1136 Route 9, Suite 1
Wappingers Falls, NY 12590
*Former Attorney for the Debtor*

MICHAEL MISZKO, JR.
*Pro Se Debtor*

**CECELIA G. MORRIS**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

       In this matter, the Court has been asked to examine a proof of claim and an underlying

fee application to determine the appropriate remedy for the actions of the debtor's former

counsel. For the reasons expressed in this memorandum of decision, the Court will order that

counsel disgorge $15,145.72 and pay those funds directly to the debtor.

**Jurisdiction**

This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334(a),

the District Court's Standing Order of Reference dated July 10, 1984, and the Amended Standing

Order of Reference dated January 31, 2012.  This is a core proceeding under 28 U.S.C.

§ 157(b)(2)(A) ("matters concerning the administration of the estate") and (E) ("orders to turn

over property of the estate").

**Background**

The Debtor, Michael Miszko, Jr. ("Debtor"), initially represented by other counsel, filed

this Chapter 13 case on October 9, 2018. Attorney Andrea B. Malin ("Debtor's Counsel"), of the

law firm Genova & Malin LLP,[1] made her first filing in this case on April 1, 2019 (ECF No. 32).

A notice of substitution of counsel for Debtor's Counsel was then made on April 24, 2019 (ECF

No. 44). Debtor's Counsel did not file her disclosure of compensation required by Rule 2016(b)

of the Federal Rules of Bankruptcy Procedure until October 1, 2019 (ECF No. 81). That same

day, Debtor's Counsel filed her first fee application, seeking payment of $15,075.00 in fees and

$70.72 in expenses and asking to be paid through the Debtor's Chapter 13 Plan (ECF No. 82).

The Trustee did not object to the fees and expenses requested and this Court approved them at a

hearing held on October 29, 2019. On November 4, 2019, the Court entered the order granting

the fee application (ECF No. 88). The order submitted by Debtor's Counsel and signed by this

Court was different from the proposed order in the fee application. That proposed order indicated

that the fees and expenses would be paid as an administrative expense through the Debtor's

Chapter 13 plan. Instead, the order submitted by Debtor's Counsel and signed by this Court

---

[1] All references to Debtor's Counsel in this memorandum also include Genova & Malin
LLP.

stated that Debtor's Counsel could take the approved fees and expenses from amounts being held in escrow.[2] At no time did she make a request to this Court to change the source of payment or its timing.

Despite taking moneys from the escrowed funds, Debtor's Counsel filed Claim 4-1 on November 6, 2019 in the amount of the fees and expenses approved. On November 5, 2020, the Debtor himself contacted the office of Krista M. Preuss, the Chapter 13 Trustee ("Trustee"), inquiring as to why Debtor's Counsel was seeking payment in Claim 4-1 when she had already taken those amounts from the escrow account. *See* ECF No. 143 at ¶ 10.

The Trustee filed the instant motion objecting to Claim 4-1 (ECF No. 143) on December 10, 2020, requesting that the Court order under 11 U.S.C. § 105 that Debtor's Counsel submit a corrected order regarding the fee application and refund the $15,145.72 paid out of escrow. Alternatively, the Trustee requested that Claim 4-1 be reduced to $0.

Debtor's Counsel filed opposition to the motion (ECF No. 155), arguing that she had already amended Claim 4-1 to remove the $15,145.72, that the Trustee's motion was defective, and ***that it was too late*** to correct the order approving the fee application and to file an appeal.[3]

The Debtor, now *pro se*, filed an affidavit in response to the motion (ECF No. 157), indicating that he was unaware that Debtor's Counsel was going to deduct funds from money being held in escrow. In his opposition, the Debtor attached a billing statement from Debtor's Counsel's firm, which stated that the firm would file a proof of claim to recover the outstanding balance.

---

[2] The escrowed funds were the result of dividing funds between the Debtor and his ex-spouse per a divorce judgment.

[3] As the arguments raised in this opposition were targeted at the Trustee's request that Debtor's Counsel file a corrected fee order, the Court need not address them.

The Court held a hearing on the matter on February 9, 2021. At the hearing, the Court indicated, in line with the Trustee's prayer for relief requesting "such other and further relief as the Court deems appropriate[,]" that the Court was considering requiring disgorgement of the $15,145.72 awarded. To afford Debtor's Counsel adequate due process to consider this sanction, the Court adjourned the matter to March 23, 2021.

Debtor's Counsel then filed supplemental opposition papers (ECF No. 169) on March 12, 2021, arguing that she did not commit fraud, did not violate the automatic stay, and did not violate applicable statutes by requesting that she be permitted to apply the escrow funds to the fee award.

At the March 23, 2021 hearing, the Court questioned Debtor's Counsel as to whether she discussed taking her fees and expenses out of the escrowed funds with the Trustee. She stated that she "believe[d] that [she] had[.]" Tr. at 8.[4] Asked whether Debtor's Counsel had discussed taking her fees and expenses out of the escrowed funds, the Trustee's attorney stated: "I don't recall that, and I certainly would've noted our system if we had a conversation like that." Tr. at 8. Debtor's Counsel acknowledged that she did not ask the Court to take her fees and expenses out of the escrowed funds, and averred that she told the Debtor and perhaps the Debtor's ex-spouse's attorney. Tr. at 8. The Court also asked Debtor's Counsel whether she reviews the filings she makes with this Court. She stated: "Absolutely, Judge; I always have." Tr. at 9. Specific to her filing of Claim 4-1, Debtor's Counsel stated that "during that period of time, . . . I was in an out of the office. Maybe I wasn't as careful as I should have been, but I probably—I signed it with other documents, and I just didn't catch the error." Tr. at 9.

---

[4] A transcript of the March 23, 2021 hearing ("Tr.") is available at ECF No. 177.

**Discussion**

Under § 330(a)(1) of the Bankruptcy Code, a Court may award reasonable and necessary

fees and expenses in this Chapter 13 case. There is no dispute regarding the reasonableness and

necessity of the fees and expenses applied for by Debtor's Counsel. The issue is in the method

that Debtor's Counsel received those approved fees and expenses. Debtor's Counsel's first

proposed order, which was attached as an exhibit to her fee application, showed that she intended

to be paid through the Chapter 13 plan (ECF No. 82).[5] This is consistent with the Chapter 13

plans filed by Debtor's Counsel in this case, including the last plan she filed prior to her

termination (ECF No. 112 at § 4.3),[6] which was filed after the fees and expenses in question

were approved. The record of the October 29, 2019 hearing on the fee application indicates no

request by Debtor's Counsel to change the source of payment for her fees and expenses.[7] By all

indications, Debtor's Counsel had only asked to be paid through the plan. Despite this, Debtor's

Counsel later uploaded an order that allowed her to be paid by deducting the amount from funds

held by her in escrow (ECF No. 88).[8] This order was entered by the Court under the assumption

---

[5] That proposed order stated that the fees and expenses would be paid as an "administrative claim . . . through the Chapter 13 plan in accordance with the United States Bankruptcy Code" and "that the Chapter 13 Trustee shall pay the amount awarded herein directly to [Debtor's Counsel] from the funds deposited by the debtor with the Chapter 13 Trustee during the pendency of the plan or upon dismissal or conversion of the case to a case under any other chapter under the United States Bankruptcy Code." (ECF No. 82).

[6] Section 4.3 of the last plan filed by Debtor's Counsel states: "Counsel for the Debtor has received a Prepetition flat fee to be applied against fees and costs incurred. Fees and costs exceeding the flat fee shall be paid from funds held by the Trustee as an administrative expense after application to and approval by the Court, pursuant to 11 U.S.C. § 330(a)(4) and Bankruptcy Rule 2016." (ECF No. 112).

[7] A transcript of the October 29, 2019 hearing is available at ECF No. 140.

[8] The order submitted by Debtor's Counsel and entered by the Court stated "that the debtor shall immediately pay the sum set forth in Schedule C herein to [Debtor's Counsel] through the release of said amount from the escrow account presently held by [Debtor's Counsel] upon entry of this Order[.]" (ECF No. 88).

that it was identical to the proposed order attached as an exhibit to Debtor's Counsel's fee

application.

I.      Whether Debtor's Counsel's Actions Were an Abuse of Process under § 105(a)

According to the Second Circuit:

> 11 U.S.C. § 105 is an omnibus provision phrased in such general terms as to be the basis for a broad exercise of power in the administration of a bankruptcy case. The basic purpose of [§] 105 is to assure the bankruptcy courts power to take whatever action is appropriate or necessary in aid of the exercise of their jurisdiction. Bankruptcy courts, both through their inherent powers as courts, and through the general grant of power in [§] 105, are able to police their dockets and afford appropriate relief.

*In re Casse*, 198 F.3d 327, 336 (2d Cir. 1999) (cleaned up). Section 105(a) "confer[s] authority

to fill the gaps left by the statutory language and to exercise equity in carrying out the provisions

of the Bankruptcy Code." *In re Greenwich Sentry, L.P.*, 534 F. App'x 77, 80 (2d Cir. 2013)

(cleaned up).

Section 105(a) of the Bankruptcy Code empowers a Court to correct an abuse of process

and to do so *sua sponte*. "Courts have used these provisions of section 105 to resolve issues

regarding the ability to detect and punish contempt, to regulate the practice of lawyers, to

administer the assets under its control and the claims related to them and to monitor and

supervise all bankruptcy estates." 2 Collier on Bankruptcy ¶ 105.02 (16th ed. 2021). "While

'abuse of process' under § 105(a) is not defined in the Bankruptcy Code, a few courts essentially

define it as 'maneuvers or schemes which would have the effect of undermining the integrity of

the bankruptcy system.'" *In re Trevino*, 615 B.R. 108, 128 (Bankr. S.D. Tex. 2020) (footnote

omitted). "The abuse of process provision of Section 105(a) has . . . been employed to impose

sanctions upon those who willfully mislead the bankruptcy court, who file clearly frivolous

petitions in order to interpose delays upon creditors, or who fail to comply with court orders

concerning scheduling or other matters." *In re Globo Comunicacoes e Participacoes S.A.*, 317

B.R. 235, 247 (S.D.N.Y. 2004) (cleaned up). Section 105(a)'s enforcement mechanisms come

with the power of civil contempt, which "should not be resorted to where there is a fair ground of

doubt as to the wrongfulness of the [party's] conduct." *Taggart v. Lorenzen*, 587 U.S. ___, ___,

139 S. Ct. 1795, 1801 (2019) (cleaned up).

"Payments to a debtor's attorney provide serious potential for evasion of creditor

protection provisions of the bankruptcy laws, and serious potential for overreaching by the

debtor's attorney, and should be subject to careful scrutiny." H.R. Rep. 95-595, at 329 (1977),

*reprinted in* 1978 U.S.C.C.A.N. 5963, 6285; S. Rep. 95-989, at 39 (1978), *reprinted in* 1978

U.S.C.C.A.N. 5787, 5825. Under Local Rule 2016-1(b), "A person requesting an award of

compensation or reimbursement of expenses for a professional must use in connection with the

application a form order that conforms to the Order Granting Application(s) for Allowance of

Interim/Final Compensation and Reimbursement of Expenses promulgated by the Court,

including any applicable schedules[.]" S.D.N.Y. LBR 2016-1(b). This procedure implements

Rule 2016 of the Federal Rules of Bankruptcy Procedure, which "is designed to require an

applicant for compensation to provide the bankruptcy court with sufficient information to allow

the court to respond appropriately to the application." 9 Collier on Bankruptcy ¶ 2016.01 (16th

ed. 2021). A fee application under Rule 2016 also requires 21-days' notice to "the debtor, the

trustee, all creditors and indenture trustees[.]" Fed. R. Bankr. P. 2002(a)(6). The process laid out

in these rules allow for the Court and interested parties to carefully scrutinize an attorney's

request for payment under § 330(a).

Debtor's Counsel filed a proposed order under the Local Bankruptcy Rules with her fee

application and then uploaded a different order to the Court after her fees and expenses were

approved. She then filed a proof of claim seeking payment from the estate for that same amount

after already being paid. In doing all this, she willfully misled this Court, the Chapter 13 Trustee,

the Debtor, and the creditors. This is an abuse of the prescribed process and undermines the

confidence that parties have in the courts and the integrity of the attorneys. Debtor's Counsel

stated in her supplemental opposition that she "drafted a new proposed Order and submitted [it]

to the Court for the Court's consideration of entry of same in reliance on the fact that this Court

has been scrupulous in review of the Orders it enters and considers[.]" This statement ignores

that requests for fees may only be made after notice to all interested parties. Fed. R. Bankr. P.

2002(a)(6). An award of fees cannot be changed after fees and expenses are approved without

additional notice to those interested parties. *See id.* Debtor's Counsel's explanation also fails to

account for why she filed a claim against the estate for monies she sought to collect directly from

Debtor. These procedures are clear and there is no fair ground of doubt that Debtor's Counsel's

conduct was wrong.

Under § 105(a), the Court is entitled to take any action to rectify that abuse of process.

Restoring the status quo as initially requested would not deter Debtor's Counsel or similarly

situated attorneys who might wish to evade the proper process in the future. "[C]ivil contempt

sanctions may [also] be warranted when a party acts in bad faith." *Taggart v. Lorenzen*, 587 U.S.

at ___, 139 S. Ct. at 1802. The Court is also mindful that "[a] primary aspect of [its] discretion is

the ability to fashion an appropriate sanction for conduct which abuses the judicial process."

*Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991); *cf. Young v. United States ex rel. Vuitton*

*et Fils S.A.*, 481 U.S. 787, 800 (1987) ("only the least possible power adequate to the end

proposed should be used in contempt cases" [cleaned up]). "The plain meaning of Section 105(a)

endorses monetary sanctions at least insofar as they deter future misconduct—especially when

that language is construed broadly, as the Second Circuit has emphasized that it should be." *In re*

*Schuessler*, 386 B.R. 458, 493 (Bankr. S.D.N.Y. 2008) (cleaned up). Cases concerning sanctions

"have not established a formulaic approach to determine how much in punitive sanctions should

be assessed; rather, courts are called upon to exercise their discretion to determine what punitive

sanction is appropriate and reasonable." *In re Hammerle*, 529 B.R. 17, 30–31 (Bankr. E.D.N.Y.

2015).

The Court finds bad faith in Debtor's Counsel's actions. *See Ranking v. City of Niagara*

*Falls, Dep't of Pub. Works*, 569 F. App'x 25, 27 (2d Cir. 2014) (affirming sanctions and finding

of bad faith where lawyer misled court). By abusing the processes laid out in the Code and

Rules, Debtor's Counsel collected $15,145.72 from the Debtor directly. She simultaneously

abused the claims allowance process by filing a proof of claim for the same amount, which if left

unnoticed would have amounted to a double payment. In its discretion, the Court determines that

the appropriate sanction is for Debtor's Counsel to pay that $15,145.72 to the Debtor and not

allow Debtor's Counsel to submit a claim for that amount, which the Court orders.

II.    Whether Debtor's Counsel Violated the Disclosure Requirements of § 329 and Rule
       2016(b)

Under 11 U.S.C. § 329(a):

> Any attorney representing a debtor in a case under this title, or in connection with
> such a case, whether or not such attorney applies for compensation under this title,
> shall file with the court a statement of the compensation paid or agreed to be paid,
> if such payment or agreement was made after one year before the date of the filing
> of the petition, for services rendered or to be rendered in contemplation of or in
> connection with the case by such attorney, and the source of such compensation.

Section 329(a) is implemented by Rule 2016(b) of the Federal Rules of Bankruptcy Procedure,

which requires that every debtor's attorney file with the United States Trustee a statement of

compensation paid or promised "within 14 days after the order for relief[.]" Rule 2016(b) also

requires that "[a] supplemental statement shall be filed and transmitted to the United States

trustee within 14 days after ***any payment or agreement not previously disclosed***." (emphasis

added).

> Disclosure of compensation pursuant to § 329 and Rule 2016(b) is mandatory, not permissive. The Bankruptcy Code requires fee disclosure so that courts can prevent overreaching by debtors' attorneys and give interested parties the ability to evaluate the reasonableness of the fees paid. Payments to a debtor's attorney provide serious potential for evasion of creditor protection provisions of the bankruptcy laws, and serious potential for overreaching by the debtor's attorney, and should be subject to careful scrutiny.

*In re Ortiz*, 496 B.R. 144, 148 (Bankr. S.D.N.Y. 2013) (cleaned up).

> Once an attorney is representing the debtor in the case within the meaning of § 329(a), that attorney must disclose compensation for services on any matter having a connection with the case. Services are in connection with the bankruptcy case if it can be objectively determined that the services rendered or to be rendered by the attorney have or will have an impact on the bankruptcy case.

*In re Storey*, No. 08-00198, 2009 WL 2855819, at *2 (Bankr. D.D.C. June 29, 2009) (cleaned up).

Debtor's Counsel first filed papers on this case on April 1, 2019 while the Debtor was

still represented by other counsel (ECF No. 32). A notice of substitution of counsel for Debtor's

Counsel was then filed on April 24, 2019 (ECF No. 44). Her disclosure of compensation required

under Rule 2016(b) was not filed until October 1, 2019, the same day she filed the fee

application underlying this dispute (ECF Nos. 81 and 82). A copy of the retention agreement

between the Debtor and Debtor's Counsel was attached to the fee application, which showed that

she was retained on March 13, 2019 (ECF No. 82, Ex. B). That retention agreement indicated

that a retainer of $3,000 was paid to Debtor's Counsel. Under § 329(a) and Rule 2016(b),

Debtor's Counsel was required to disclose within 14 days that she had been paid and that an

agreement to pay had been made. She did not. The Court holds that that failure to timely disclose constitutes a violation of § 329(a) and Rule 2016(b).

> Anything less than full disclosure leaves counsel exposed to the possibility that the entire fee may be denied, and the approach within the Second Circuit has uniformly been to decide Bankruptcy Code and Rule disclosure violations with an inflexible standard. No exceptions are to be made based upon inadvertency (slipshodness) or good faith. Many courts, perhaps the majority, punish defective disclosure by denying all compensation.

*In re Gorski*, 519 B.R. 67, 73 (Bankr. S.D.N.Y. 2014) (cleaned up).

This Court previously approved the fees and expenses underlying this matter and has approved other fees and expenses in this case. Under applicable case law, the Court would be justified in ordering that Debtor's Counsel disgorge *all* fees paid in this case. *See In re Stewart*, 970 F.3d 1255, 1264 (10th Cir. 2020) (collecting cases). Given the isolated nature of the fees at issue, the Court will only require the disgorgement of the $15,145.72 taken out of the escrowed funds for violating § 329(a) and Rule 2016(b). *See In re Gorski*, 519 B.R. at 73 (divorce counsel ordered to disgorge $500 out of $7150 retainer). Debtor's Counsel is ordered to disgorge the $15,145.72 taken to the Debtor and will not be allowed to file a claim for that amount.

III.     Whether Debtor's Counsel Violated the Automatic Stay of § 362(a)(3)

Under 11 U.S.C. § 362(a)(3), the filing of a bankruptcy petition "operates as a stay" against "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate[.]"

> Section 362(a)(3) stays all actions, whether judicial or private, that seek to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate. The trustee or debtor in possession takes control of all property of the estate in order to maintain any going concern value and to assure an equitable distribution of the property among creditors. This requires that no entity seek to interfere with these tasks by taking possession of or exercising control over property of the estate. It also requires that no entity grab non-estate property from the estate without the court supervision that comes from a stay relief proceeding.

3 Collier on Bankruptcy ¶ 362.03[5] (16th ed. 2021). "[Section] 362(a)(3) prohibits affirmative

acts that would disturb the status quo of estate property as of the time when the bankruptcy

petition was filed." *City of Chicago v. Fulton*, 592 U.S. ___, ___, 141 S. Ct. 585, 590 (2021).

The escrowed funds underlying this dispute resulted from the Debtor and his ex-spouse

dividing an Edward Jones account under a December 6, 2016 order from state court. No amount

of the escrowed funds was claimed as an exemption in the amended schedules filed just prior to

Debtor's Counsel's fee application. *See* ECF. No. 76. Under 11 U.S.C. § 541(a), the escrowed

funds were inarguably property of the estate. While Debtor's Counsel obtained a court order

allowing her to take her fees and expenses out of the escrowed funds, which are property of the

estate, she never moved for relief from the automatic stay to do so.

> A violation of the stay is punishable as contempt of court. Most courts will impose
> contempt sanctions for a knowing and willful violation of a court order, and the
> automatic stay is considered as equivalent to a court order. If the conduct is willful,
> even if based upon advice of counsel, contempt is an appropriate remedy. When a
> violation of the stay is inadvertent, contempt is not an appropriate remedy.
> Nevertheless, the creditor has a duty to undo actions taken in violation of the
> automatic stay. Failure to undo a technical violation may elevate the violation to a
> willful one.

3 Collier on Bankruptcy ¶ 362.12[2] (16th ed. 2021) (footnotes omitted).

At the February 9, 2021 hearing, the Court alerted Debtor's Counsel to the fact that a stay

violation may have occurred here with regards to her taking her fees and expenses from the

escrowed funds (ECF No. 168 at 19). In her supplemental opposition, she argues that

postpetition payment of attorney's fees does not violate the automatic stay and that she was

entitled to receive payment from estate funds under the Chapter 13 plan (ECF No. 169 at 12–14).

These arguments ignore the way she obtained that estate property and the fact that no plan has

been confirmed.

As a default, the attorney in a Chapter 13 case will ask for fees and expenses to be paid

under the Chapter 13 plan. *See* S.D.N.Y. Model Chapter 13 Plan at § 4.3 ("Fees and costs

exceeding the flat fee shall be paid from funds held by the Trustee as an administrative

expense[.]"). After scrutiny by various parties, including the Court and the Trustee, those fees

and expenses can be paid from estate property. *See* 11 U.S.C. §§ 503(b)(2), 507(a)(2), and

1322(a)(2). This process allows for transparency and predictability, which Debtor's Counsel did

not follow. The Code and Rules provide the proper means to obtain payment of postpetition fees

and expenses. Debtor's Counsel asked this Court for fees and expenses to be paid through the

plan, which the Trustee did not object to and the Court approved, and then uploaded an order

contrary to that request, which allowed her to be paid immediately from estate property. She

circumvented the proper process to obtain the funds. These actions violated the automatic stay.

The Trustee's motion was filed over four months ago. Debtor's Counsel has refused to

acknowledge the opaque way in which she was paid her fees and expenses. She has instead

continued with irrelevant arguments about how a debtor's attorney *can* be paid. Debtor's

Counsel deliberately uploaded the order granting her fee application with language changed to

allow her to take property of the estate without properly apprising all interested parties. The

Court finds that Debtor's Counsel willfully took property of the estate in violation of the

automatic stay. As punishment—and to deter similar behavior—the Court orders the immediate

return of the $15,145.72 taken to the Debtor and that Debtor's Counsel may not file a claim for

this amount.

***

Debtor's Counsel's changing the order that was submitted was a serious abuse of process.

Her actions also contravene §§ 329 and 362(a)(3). It does not matter that she has amended Claim

4-1 to remove the fees and expenses that were approved. Under its § 105(a) powers, and in line with the Trustee's request that the Court grant "such other and further relief as the Court deems appropriate[,]" the Court hereby orders Debtor's Counsel to pay the $15,145.72 previously approved to the Debtor. For the absence of doubt, the Court holds that this remedy is appropriate for each of the violations noted above ***concurrently*** (i.e., each violation noted separately requires the disgorgement of the $15,145.72 at issue). Debtor's Counsel may not file a claim for those fees and expenses.

In reaching this decision, the Court has considered Debtor's Counsel's arguments concerning deterrence and her firm's financial position. Addressing Debtor's Counsel's argument that any sanction should be limited to that which is necessary to deter her, the Court has determined that only the funds underlying the Trustee's motion be disgorged.[9] Under § 329(a) and Rule 2016(b), the Court could have required that Debtor's Counsel disgorge ***all*** fees in this case. The Court has chosen not to do so. As for arguments concerning her firm's financial position, which Debtor's Counsel discusses without citation to any authority, the Court notes that "the principal purpose of the Bankruptcy Code is to grant a fresh start to the honest but unfortunate debtor." *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367 (2007) (cleaned up). Debtor's Counsel's violations against the Debtor and this Court outweigh her firm's financial position.

---

[9] In coming to this decision, the Court also recognizes its own inadvertence in signing the order submitted by Debtor's Counsel. That inadvertence in no way excuses Debtor's Counsel's behavior. Every violation noted above would still have existed based solely upon Debtor's Counsel's actions prior to the order entering.

## Conclusion

For the foregoing reasons, the Court grants the Trustee's motion. A separate order will

enter.



/s/ Cecelia G. Morris

**Dated: April 22, 2021**
**Poughkeepsie, New York**

_____

**Hon. Cecelia G. Morris**
**Chief U.S. Bankruptcy Judge**